UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IBRAHIM ABDELMASSEH, *et al.*,

                          Petitioners,

          v.

LAURA HERMOSILLO, *et al.*,

                          Respondents.

Case No. C26-730-MLP

ORDER

Through counsel, Petitioners Ibrahim Abdelmasseh, Moises Cardenas Garcia, Xavier Gutierrez-Sanchez, Habtamu Gete, Mikiyas Mulu, Nfinda Nzola, Yanila Silva Montiel, Maledine Webster, and Juliana Zambrano Rojas filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging their redetention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Dkt. # 1.) Respondents filed a return (dkt. # 14) supported by an unsworn declaration from their counsel, Michelle R. Lambert (dkt. # 15), which attaches sworn declarations from ICE Deportation Officers and excerpts from several A-files (*see* Lambert Decl., ¶¶ 2-8).[1] Petitioners filed a

---

[1] Respondents did not provide A-file excerpts for Petitioners Garcia, Mulu, or Montiel.

ORDER - 1

traverse. (Dkt. # 16.) Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition.[2]

## I.      PROCEDURAL BACKGROUND

Petitioners filed this habeas petition on March 3, 2026, alleging that Respondents violated their procedural due process rights by redetaining them without pre-deprivation notice and without a hearing. (Dkt. # 1.) Respondents filed a return on March 17, 2026, asserting that Petitioners' redetention was lawful and authorized by statute. (Dkt. # 14.) Petitioners filed a traverse on March 23, 2026. (Dkt. # 16.)

The following undisputed facts are common to all Petitioners. Petitioners are noncitizens who were initially detained after entering the United States without admission and were then affirmatively released into the community—either on an Order of Release on Recognizance ("OREC") or on humanitarian parole—subject to specified supervision conditions. While released, they resided in the United States, pursued protection claims, and, with limited exceptions, accrued no criminal convictions. Each was later redetained by immigration officials without advance notice or an opportunity to contest the basis for redetention. (Dkt. ## 1, 14, 16.)

Petitioners contend that their redetention without notice or an opportunity to contest the basis for custody violated the Fifth Amendment under *Mathews v. Eldridge*, 424 U.S. 319 (1976). (Dkt. ## 1, 16.) Respondents argue that Petitioners are "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b) and therefore have no entitlement to additional process.[3] (Dkt. # 14 at 3-12.)

---

[2] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 12.)

[3] Respondents' declarations generally note that Petitioners did not request bond hearings before seeking relief from this Court. However, any exhaustion requirement is prudential in nature, and the Court declines to impose one in this case. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 n.4 (E.D. Cal. 2025).

ORDER - 2

At the outset, the Court notes that although both Petitioners and Respondents acknowledge that application of the *Mathews* factors is inherently case-specific, their briefing largely treats the nine Petitioners collectively, with limited differentiation among their distinct factual and procedural histories. (*See* dkt. ## 1, 14, 16.) This reliance on generalized, group-wide argument impedes the case-by-case analysis *Mathews* requires. That concern is particularly acute here, where (1) Petitioners are differently situated with respect to their bases for release, alleged supervision violations, criminal histories (if any), and the asserted justifications for redetention, and (2) Petitioners bear the burden of proof. In multi-petitioner habeas actions of this kind, the Court expects the parties to address the *Mathews* factors as applied to each petitioner's individual circumstances.

**II.      LEGAL STANDARDS**

**A.      Habeas Petitions**

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

**B.      Mandatory Detention Scheme**

Section 1225 applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Such applicants are generally subject to mandatory detention

ORDER - 3

and may be released only on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Humanitarian parole is a discretionary, case-by-case exception to detention. 8 U.S.C. § 1182(d)(5)(A). Regulations require that parolees "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). A grant of parole therefore reflects a determination that (1) urgent humanitarian reasons or significant public benefit justify release and (2) the person is not a security or flight risk. *See* 8 U.S.C. § 1182(d)(5)(A), 8 C.F.R. § 212.5(b).

Parole may terminate automatically upon the individual's departure from the United States or "at the expiration of the time for which parole was authorized," without written notice. 8 C.F.R. § 212.5(e)(1). Otherwise, it may be terminated if the purpose of parole has been accomplished or if an authorized Department of Homeland Security ("DHS") official determines that neither humanitarian reasons nor public benefit warrants continued presence in the United States. *Id.*; *see also* 8 U.S.C § 1182(d)(5)(A). In those circumstances, written notice of termination is required. 8 C.F.R. § 212.5(e)(2)(i).

Following termination of parole, "any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 C.F.R. § 212.5(e)(1). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [an authorized DHS official] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i). Continued detention thus must rest on an individualized assessment; otherwise, renewed parole is required.

Where the nominal parole period has lapsed but DHS leaves the noncitizen at liberty and continues to process applications or authorize employment, courts have inferred that parole was

ORDER - 4

effectively continued beyond the stated expiration date. In that circumstance, any later termination must comply with the written-notice procedures of 8 C.F.R. § 212.5(e)(2)(i). *See Telenchana v. Hermosillo*, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026); *Dieng v. Hermosillo*, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026).

### C.   Procedural Due Process and the *Mathews* Test

Procedural due process requires meaningful notice and a genuine opportunity to be heard before the federal government infringes a protected liberty interest. *Mathews*, 424 U.S. at 332. In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, which considers: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures, and the probable value of additional safeguards; and (3) the government's countervailing interests, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

### III.   DISCUSSION

### A.   General *Mathews* Analysis

#### 1.   Private Interest

Freedom from physical confinement is among the most fundamental liberty interests, and noncitizens are entitled to due process in its deprivation. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Zadvydas*, 533 U.S. at 690-96. All Petitioners spent many months living in the community under supervision, pursuing asylum, working, and supporting family. That their releases warned of possible revocation does not diminish the gravity of renewed incarceration. *See P.T. v. Hermosillo*, 2025 WL 3294988, at *2 (W.D. Wash. Nov. 26, 2025); *Calderon v.*

ORDER - 5

*Kaiser*, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025). Respondents do not dispute that the first *Mathews* factor favors Petitioners. (Dkt. # 14 at 10.)

### 2.    Risk of Erroneous Deprivation and Value of Safeguards

Respondents contend that no pre-deprivation notice or hearing was required because ICE relied on "objective" records—Alternatives to Detention ("ATD") alerts, missed check-ins, and alleged gang-association intelligence—and that any errors can be remedied through post-deprivation review. (Dkt. # 14 at 9-12.) They principally rely on *Martinez Hernandez v. Andrews*, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025).

*Martinez Hernandez* is distinguishable. It addressed only interim relief and expressly recognized a "significant risk of erroneous deprivation" when ICE provides no notice or opportunity to respond. 2025 WL 2495767 at *11-12. It also involved a much more developed evidentiary record and a materially more serious criminal history than present here. *Id.* at *1-2.

By contrast, Respondents here rely on brief officer declarations and sparse ATD summaries. Courts have recognized that entries such as "no location received," "tracker low battery," or "master zone leave" may reflect technical problems or misunderstanding, not deliberate noncompliance. *See, e.g.*, *Telenchana*, 2026 WL 696806, at *5 (granting habeas relief where the record did not show that alleged missed biometric check-ins actually formed the basis for redetention, ICE made no flight-risk or danger assessment, and the petitioner received no prior notice or hearing); *Sarwari v. Wamsley*, 2026 WL 279968, at *5 (W.D. Wash. Feb. 3, 2026) (distinguishing *Martinez Hernandez* and finding that bare officer declarations provide no assurance that alleged violations are not pretextual). The record does not show that ICE informed Petitioners of the alleged violations, allowed them to correct or explain them, or provided any opportunity to contest the factual basis for redetention before revoking release.

ORDER - 6

The risk of erroneous deprivation is further heightened for the Petitioners released on parole because DHS appears not to have followed its own parole-termination procedures in 8 C.F.R. § 212.5(e)(2)(i) when it effectively continued parole beyond nominal expiration dates. On similar facts, courts have found that "the risk of erroneous deprivation is significant" when DHS fails to adhere to those procedures. *Torres v. Hermosillo*, 2026 WL 145715, at *7 (W.D. Wash. Jan. 20, 2026); *see also Telenchana*, 2026 WL 696806, at *7-10; *Dieng*, 2026 WL 411857, at *6-8; *Zavorin v. Wamsley*, 2026 WL 309733, at *4 (W.D. Wash. Feb. 5, 2026).

A brief, prompt custody hearing would substantially reduce the risk of erroneous redetention. The second *Mathews* factor therefore weighs in Petitioners' favor.

### 3.   Government's Interest

DHS has a legitimate and substantial interest in enforcing immigration laws, ensuring attendance at proceedings, protecting public safety, and efficiently managing ATD and parole programs. Respondents, however, identify no concrete way in which providing basic pre-deprivation notice or a prompt post-deprivation hearing would undermine those interests. Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden modest relative to the risk and consequences of erroneous detention. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Alfonso v. Bondi*, 2026 WL 395326, at *6-7 (W.D. Wash. Feb. 12, 2026).

On this record, Respondents have not shown exigent circumstances—such as an immediate, specific danger to the community or imminent flight—that would make even a prompt post-deprivation hearing impracticable. The third *Mathews* factor therefore also favors Petitioners as a general matter. As discussed below, however, limited, fact-specific

ORDER - 7

considerations relating to particular Petitioners' alleged flight or security risks affect whether due process requires pre-deprivation notice and hearing or whether a prompt post-deprivation hearing is sufficient.

Having determined that Petitioners were redetained without constitutionally required process, the Court next addresses the appropriate remedy for their unlawful confinement. "In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. *Cardozo v. Bostock*, 2025 WL 2592275, at \*2 (W.D. Wash. Sept. 8, 2025) (quoting *Harvest v. Castro*, 531 F.3d 737, 741-42 (9th Cir. 2008)). After issuing a conditional writ, a district court retains jurisdiction to ensure compliance with the writ and may order unconditional release if the government fails to comply with the initial habeas order. *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020).

Other courts in this District have ordered post-deprivation hearings where exigent circumstances made pre-deprivation process impracticable. *See Quinonez Torres v. Hermosillo*, 2026 WL 547591, at \*6 (W.D. Wash. Feb. 23, 2026) (citing *Martinez Hernandez*, 2025 WL 2495767, at \*11 (citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (noting there may be "special case[s]" where a pre-deprivation hearing is not realistic))); *see also, e.g., Balwan v. Bondi*, 2026 WL 497098, at \*8 (W.D. Wash. Feb. 23, 2026) (ordering bond hearing and collecting cases following the same approach). However, "absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process[.]" *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025); *see also E.A. T.-B.*, 795 F. Supp. 3d at 1323-24.

ORDER - 8

**B.      Application of *Mathews* to Petitioners Released on OREC**

Respondents effectively treat Petitioners released on OREC—Petitioners Nzola, Webster, Gutierrez Sanchez, and Rojas—as subject to discretionary detention under 8 U.S.C. § 1226(a). (Dkt. # 14 at 11-12.) They contend that documented violations of OREC and ATD conditions justify redetention without any pre-deprivation process, relying on *Martinez Hernandez*. For the reasons already discussed, *Martinez Hernandez* is not controlling.

*1.      Petitioner Nfinda Nzola*

Petitioner Nzola, a citizen of Angola, entered without inspection around November 22, 2024, was apprehended, found inadmissible, and released on OREC the next day with conditions including reporting, GPS monitoring, and compliance with all laws. (Nzola Decl. (dkt. # 7), ¶¶ 1-3; Delgado Decl. (dkt. # 15-7), ¶¶ 3-4.) While released, he moved to Washington, reported to the Tukwila ICE office, submitted weekly photo check-ins, attended monthly Intensive Supervision Appearance Program ("ISAP") appointments, timely filed an asylum application on January 6, 2025, and became active in his church. (Nzola Decl., ¶¶ 3, 5, 8; Delgado Decl., ¶ 5.)

ICE records reflect OREC/ATD violations between December 2024 and December 2025, including "master zone leave" alerts, missed biometric check-ins and office visits, a failed home visit, and a February 2025 domestic-violence arrest that was later dismissed. (Nzola Decl., ¶ 4; Delgado Decl., ¶¶ 6-8.) On January 7, 2026, ICE arrested him at a scheduled ISAP check-in and transferred him to NWIPC, where he remains. (Nzola Decl., ¶¶ 6-7; Delgado Decl., ¶ 9.) On March 4, 2026, the Tacoma Immigration Court denied his asylum application and ordered him removed to Uganda; no appeal has yet been filed. (*Id.*, ¶¶ 10-11.)

Petitioner's liberty interest is substantial. At the same time, the record reflects multiple alleged technical and substantive violations, including an arrest (ultimately dismissed) and

ORDER - 9

numerous ATD alerts, as well as failed home and office visits. (Delgado Decl., ¶¶ 6-7.) Although those violations are not fully documented, Petitioner does not rebut them, and they provide at least a colorable basis for ICE's concern about flight risk. Petitioner was nevertheless seized at a regularly scheduled check-in, and nothing in the record suggests exigent circumstances that prevented ICE from providing pre-deprivation notice or a prompt hearing.

As the *Mathews* factors weigh in Petitioner Nzola's favor, the Court holds that, under these circumstances, a prompt post-deprivation hearing would be consistent with due process. *See Balwan*, 2026 WL 497098, at *8-10. This hearing must be held within seven calendar days of this Order's filing date, *see*, *e.g.*, *Tabares Reyes v. Hernandez*, 2026 WL 820481, at *6 (W.D. Wash. Mar. 25, 2026); *Singh Sandhu v. Noem*, 2026 WL 607701, at *3 (W.D. Wash. Mar. 4, 2026); *Quinonez Torres*, 2026 WL 547591, at *6-10; *Reyes v. Hermosillo*, 2026 WL 507678, at *3 (W.D. Wash. Feb. 24, 2026), and Respondents are enjoined from denying bond to Petitioner on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2). *See Balwan*, 2026 WL 497098, at *10. At the hearing, the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. *Id.* at *5 (noting that clear and convincing evidence standard was appropriate when fashioning a remedy, even if such a standard were not required "as a general matter" for all noncitizens redetained following release); *Singh*, 2026 WL 592265, at *3 (noting circuit split on evidentiary standard for post-deprivation bond hearings and concluding it was "reasonable" to impose clear and convincing evidence standard to remedy due process violation).

### 2. Petitioner Maledine Webster

Petitioner Webster, a citizen of Jamaica, entered without inspection near San Ysidro, California, around March 1, 2024, was apprehended, found inadmissible, and released on OREC

ORDER - 10

on March 2, 2024. (Webster Decl. (dkt. # 9), ¶¶ 1, 3; Rodriguez Decl. (dkt. # 15-8), ¶¶ 3-4.) While released, he relocated to Florida, attended ICE check-ins every three months, timely filed an asylum application in January 2025, later moved to Spokane, Washington, and was placed on ATD with SmartLink and in-person reporting. (Webster Decl., ¶¶ 4-5, 7; Rodriguez Decl., ¶ 5.)

He obtained work authorization, trained and worked as a licensed caregiver in Oregon, and states that he notified ICE via SmartLink and telephone of his temporary Oregon address and requested rescheduling when he could not attend a December 17, 2025 Spokane check-in. (Webster Decl., ¶¶ 6-10.) ICE records show travel outside his "master zone" on multiple dates between July 2025 and January 2026, which ICE treated as OREC/ATD violations. (Rodriguez Decl., ¶ 6.) On January 20, 2026, ICE arrested him at the Spokane ICE office and transferred him to NWIPC, where he remains. (Webster Decl., ¶¶ 11-16; Rodriguez Decl., ¶ 7.) His case was transferred to the Tacoma Immigration Court, with an asylum merits hearing set for March 27, 2026. (*Id.*, ¶¶ 8-9.)

Respondents largely rely on "master zone leave" travel alerts and do not dispute that Petitioner remained engaged with ICE, requested rescheduling, and maintained work authorization. The alleged violations thus consist mainly of travel and technical ATD issues for a person who consistently appeared at ICE offices and maintained a stable presence in the community. On this record, the risk of erroneous deprivation is substantial, and Respondents identify no exigent circumstance justifying seizure without prior process.

Accordingly, the Court finds that Petitioner Webster should be immediately released. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324.

ORDER - 11

3.    *Petitioner Xavier Gutierrez-Sanchez*

Petitioner Gutierrez-Sanchez, a citizen of Venezuela, entered without inspection near El Paso, Texas, around April 20, 2024, was found inadmissible, and released on OREC. (Sanchez Decl. (dkt. # 4), ¶¶ 1-2; Hubbard Decl. (dkt. # 15-5), ¶ 3.) While released, he relocated to Oregon, complied with ICE check-ins in Portland, timely filed asylum on March 28, 2025, and lived in Gresham with his spouse and two minor children. He has no criminal history in the United States. (Sanchez Decl., ¶¶ 3-5, 7; dkt. # 1 at 10.)

On November 10, 2025, an ICE Assistant Field Office Director cancelled his OREC based on information that he was allegedly associating with known or suspected Tren de Aragua gang members. (Hubbard Decl., ¶ 4.) ICE arrested him at a scheduled Portland check-in and transferred him to NWIPC, where he remains. (Sanchez Decl., ¶¶ 6, 8.) On January 16, 2026, the Tacoma Immigration Court granted DHS's motion to pretermit his asylum application under an Asylum Cooperative Agreement with Ecuador and ordered him removed to Ecuador. (Hubbard Decl., ¶¶ 5-7.) He appealed to the Board of Immigration Appeals ("BIA") on March 3, 2026; that appeal is pending. (Sanchez Decl., ¶ 9; Hubbard Decl., ¶ 9.)

The record contains only a bare reference to alleged gang association. (Hubbard Decl. ¶ 4; Lambert Decl., Exs. N-O.) Petitioner does not respond to Respondents' allegations about gang affiliation, but the underlying A-files do not substantiate the allegations, Petitioner has no criminal history in the United States, and he was redetained at a scheduled check-in he attended with his children. The paucity of underlying evidence makes the risk of erroneous deprivation unusually high. At the same time, if substantiated, gang-association allegations could provide a reasonable basis for short-term detention while DHS presents its evidence regarding danger or flight risk.

ORDER - 12

As the *Mathews* factors weigh in Petitioner Gutierrez-Sanchez's favor, the Court holds that, under these circumstances, a prompt post-deprivation hearing would be consistent with due process. As explained above, this hearing must be held within seven calendar days of this Order's filing date, Respondents are enjoined from denying bond to Petitioner on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2), and, at the hearing, the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. *See, e.g., Balwan*, 2026 WL 497098, at *8-10.

### 4. Petitioner Juliana Zambrano Rojas

Petitioner Rojas, a citizen of Venezuela, entered without inspection around December 5, 2023, was apprehended by CBP, found inadmissible, and released on OREC on December 14, 2023, with reporting conditions and an ICE-issued phone for photo check-ins. (Rojas Decl. (dkt. # 10), ¶ 2; Reed Decl. (dkt. # 15-9), ¶¶ 3-5.) When an intended sponsor in Indiana declined to house her, she moved to Chicago, reported her new address, and was instructed to continue phone-based check-ins without in-person reporting. (Rojas Decl., ¶ 3.)

She submitted photos when prompted until roughly August–October 2024, when she began missing biometric prompts; by December 2024, the device stopped transmitting valid check-ins. (Rojas Decl., ¶ 4; Reed Decl., ¶ 6.) She states she repeatedly emailed and visited the Chicago ICE Field Office to resolve the device problem or secure in-person reporting, without response. (Rojas Decl., ¶ 4.) During release, she timely filed asylum, obtained work authorization and a Social Security number, worked in restaurants, lived with her mother and three minor siblings, and accrued no criminal history. (*Id.*, ¶¶ 5, 9; Reed Decl., ¶¶ 4, 9.)

On December 11, 2025, while driving through Montana during a family move from Chicago to Washington State, she was stopped in a joint Border Patrol-Montana Highway Patrol

ORDER - 13

operation. Border Patrol officers determined she was unlawfully present and not in compliance with her prior release conditions, arrested her, and she was transferred to NWIPC, where she remains. (Rojas Decl., ¶ 6; Reed Decl., ¶ 7.) On December 29, 2025, DHS issued a new Notice to Appear ("NTA") charging inadmissibility. She filed a new Form I-589 with the Tacoma Immigration Court on February 9, 2026; her merits hearing is set for April 6, 2026. (*Id.*, ¶¶ 8-10.)

Respondents' asserted basis for redetention is missed phone biometrics and the later traffic stop. The record, however, supports Petitioner's claim that the device malfunctioned and that she affirmatively sought to cure the problem by contacting ICE both in person and by email. ICE did not provide alternative reporting instructions or any warning that her release would be revoked. She maintained employment, lived with family, and has no criminal history. On these facts, the risk of erroneous deprivation is especially high, and the record suggests the noncompliance may have been technical, not willful. Respondents identify no exigent circumstance—such as recent criminal conduct or active evasion—that would justify detention pending a later hearing.

Accordingly, the Court finds that Petitioner Rojas should be immediately released. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324.

### C.    Application of *Mathews* to Petitioners Released on Parole

#### 1.    Petitioner Ibrahim Abdelmasseh

Petitioner Abdelmasseh, a Christian citizen of Egypt, entered without inspection near Tecate, California, around October 4, 2024, was found inadmissible, and placed in expedited removal proceedings. (Abdelmasseh Decl. (dkt. # 2), ¶¶ 1-2; Andron Jr. Decl. (dkt. # 15-1), ¶¶ 3-4.) On October 29, 2024, ICE granted him one year of interim parole. (*Id.*, ¶ 4.) While on parole, he relocated to New York, reported to ICE, attended in-person check-ins, filed for

ORDER - 14

asylum, attended St. George Coptic Orthodox Church in Brooklyn, and worked in construction; he has no criminal record. (Abdelmasseh Decl., ¶¶ 3-5.)

After ICE determined his one-year parole had expired without extension, he was arrested on November 26, 2025, pursuant to an administrative warrant and transferred to NWIPC, where he remains. (Abdelmasseh Decl., ¶¶ 6-7; Andron Jr. Decl., ¶ 5.) DHS issued an NTA on January 10, 2026, commencing removal proceedings in Tacoma, and he filed an asylum application on January 26, 2026. (*Id.*, ¶¶ 6-7.) On DHS's motion to pretermit under an Asylum Cooperative Agreement with Uganda, the Immigration Judge ordered him removed to Uganda on March 4, 2026. (*Id.*, ¶ 8.) He appealed to the BIA on March 9, 2026; that appeal is pending. (*Id.*, ¶¶ 9-10.)

Petitioner was redetained shortly after the facial expiration of his one-year parole, after DHS had allowed him to develop community ties and pursue asylum. There is no allegation of criminal conduct or ATD violations; DHS's stated rationale is that his time-limited parole ended. DHS did not provide written notice of termination under 8 C.F.R. § 212.5(e)(2)(i) or an opportunity to contest redetention. Although the record reveals no new public-safety or flight-risk concern or indication that the purpose for which parole was authorized had been accomplished, *see Dieng*, 2026 WL 411857, at *6, the implementing regulations authorize redetention upon termination of parole. *See* 8 C.F.R. § 212.5(e)(1). Here, Petitioner's interim notice authorizing parole, issued October 29, 2024, stated that it would automatically terminate after one year. (*See* Lambert Decl., Ex. K.) Petitioner was therefore on notice as to the potential for redetention. His contention that "Respondents do not argue that any of the Petitioners were detained upon expiration of their parole" (dkt. # 16 at 6) is inconsistent with the record, which states that "after expiration of the one-year period of parole, Petitioner was taken into ICE custody[.]" (Andron Jr. Decl., ¶ 5.) Because ICE redetained Petitioner within a month of his

ORDER - 15

parole expiration, and at the first point of contact thereafter, his case is distinguishable from those in which DHS leaves the noncitizen at liberty and continues to authorize employment or supervised release. *See Torres*, 2026 WL 145715, at *7; *Telenchana*, 2026 WL 696806, at *7-10.

As the *Mathews* factors weigh in Petitioner Abdelmasseh's favor, the Court holds that, under these circumstances, a prompt post-deprivation hearing would be consistent with due process. As above, this hearing must be held within seven calendar days of this Order's filing date, Respondents are enjoined from denying bond to Petitioner on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2), and, at the hearing, the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. *See, e.g.*, *Balwan*, 2026 WL 497098, at *8-10.

> 2.    *Petitioner Moises Cardenas Garcia*

Petitioner Garcia, a 19-year-old citizen of Mexico, applied for admission at the San Ysidro Port of Entry around December 7, 2022, without valid entry documents. He was paroled into the United States as a minor with his family and served with an NTA charging inadmissibility. (Garcia Decl. (dkt. # 3), ¶¶ 1-2; Dumo Decl. (dkt. # 15-2), ¶ 3.) He relocated to Oregon to live with family and applied for asylum. (Garcia Decl., ¶¶ 2-4; Dumo Decl., ¶ 6.)

In August 2024, he was arrested in Washington County, Oregon, on a second-degree robbery charge, released the same day, and placed on juvenile probation, which he completed early. He has no adult criminal convictions. (Garcia Decl., ¶¶ 6-9; Dumo Decl., ¶¶ 4-5.) On October 14, 2025, ICE arrested him pursuant to an administrative warrant and transferred him to NWIPC, where he remains. (Garcia Decl., ¶¶ 5, 7-8; Dumo Decl., ¶ 5.) On February 20, 2026, he filed an asylum application in the Tacoma Immigration Court, with an individual hearing set for March 27, 2026. (Garcia Decl., ¶ 7; Dumo Decl., ¶¶ 6-7.)

ORDER - 16

Petitioner was first paroled as a minor, has lived with family, and has a single juvenile arrest resulting in completed probation and no adult convictions. DHS identifies no subsequent misconduct and offers no contemporaneous analysis of danger or flight risk. The I-200 warrant reflects a discretionary revocation of release, but Respondents provide no written termination notice, no record of individualized assessment, and no exigency. Given Petitioner's age, completed probation, and ongoing removal proceedings, the Court finds no reasonable basis in this record for extended detention without a hearing.

Accordingly, the Court finds that Petitioner Garcia should be immediately released. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324.

### 3. Petitioners Habtamu Gete and Mikiyas Mulu

Petitioner Gete, a citizen of Ethiopia, entered without inspection near Calexico, California, around October 31, 2024, was found inadmissible, served with an NTA, and released on interim parole subject to reporting and address-update conditions. (Gete Decl. (dkt. # 5), ¶ 2; First Arambula Decl. (dkt. # 15-3), ¶¶ 3-5.) Petitioner Mulu, also a citizen of Ethiopia, entered without inspection near Calexico on the same date, was found inadmissible, served with an NTA, and released on parole and ATD with regular check-in obligations. (Mulu Decl. (dkt. # 6), ¶ 2; Second Arambula Decl. (dkt. # 15-4), ¶¶ 3-4.) Both relocated to the Bethesda, Maryland area, retained counsel, timely filed asylum applications, obtained venue in the Hyattsville Immigration Court, attended hearings, received work authorization, and worked; neither has a criminal history. (Gete Decl., ¶¶ 3, 5; Mulu Decl., ¶¶ 3, 5; First Arambula Decl., ¶ 8; Second Arambula Decl., ¶ 8.)

ICE records show that Petitioner Gete's parole expired on December 3, 2025, and that he relocated without prior authorization, allegedly violating parole conditions. (First Arambula

ORDER - 17

Decl., ¶ 5.) For Petitioner Mulu, ATD records indicate that he missed a scheduled ATD meeting on November 6, 2025, and could not be contacted thereafter, resulting in ATD termination on November 10, 2025. (Second Arambula Decl., ¶ 5.) On January 20, 2026, based on information that both men would arrive by train in Portland from Chicago, ICE officers conducted surveillance at the Portland Amtrak station, observed them disembark and enter a vehicle, stopped the vehicle, and arrested them on administrative warrants. (First Arambula Decl., ¶ 6; Second Arambula Decl., ¶ 6.) They were transferred to NWIPC, and their individual hearings were reset for March 26, 2026, in Tacoma. (Gete Decl., ¶ 6; First Arambula Decl., ¶ 7-8; Mulu Decl., ¶ 6; Second Arambula Decl., ¶ 7-8.)

DHS relies on two circumstances for both Petitioners: (1) the facial expiration or termination of parole/ATD, and (2) allegedly unauthorized relocation and, in Petitioner Mulu's case, a reported failure to appear and loss of contact, culminating in a targeted enforcement operation. Although the underlying records are sparse and communication failures are plausible, these allegations present a non-frivolous supervision concern—particularly as to Petitioner Mulu's alleged inaccessibility—and distinguish them from Petitioners whose violations consist solely of unexplained technical ATD alerts. The government's interests are also affected by Petitioners' failure to substantively respond to the asserted bases for redetention.

As the *Mathews* factors weigh in Petitioners Gete and Mulu's favor, the Court holds that, under these circumstances, a prompt post-deprivation hearing would be consistent with due process. As explained above, this hearing must be held within seven calendar days of this Order's filing date, Respondents are enjoined from denying bond to Petitioners on the basis that they are detained pursuant to 8 U.S.C. § 1225(b)(2), and, at the hearing, the government bears

ORDER - 18

the burden of proving by clear and convincing evidence that Petitioners are a danger to the community or a flight risk. *See*, *e.g.*, *Balwan*, 2026 WL 497098, at *8-10.

### 4. *Petitioner Yanila Silva Montiel*

Petitioner Montiel, a citizen of Venezuela, entered the United States around September 1, 2024, was found inadmissible, and was released on parole with service of an NTA. (Montiel Decl. (dkt. # 8), ¶¶ 1-2; Benjamin Decl. (dkt. # 15-6), ¶¶ 3-4.) After relocating to Washington, she reported to the Yakima ICE office, enrolled in ATD, states that she submitted weekly photo check-ins and attended monthly ISAP appointments, and timely filed for asylum on August 29, 2025. She has no criminal history. (Montiel Decl., ¶¶ 3-4, 7.)

ATD records reflect several alleged 2025 violations, including missed biometric check-ins and missing GPS data. (Benjamin Decl., ¶¶ 7-8.) DHS revoked her parole on April 18, 2025. (*Id.*) In December 2025, her officer told her that supervision would be reduced and later instructed her to appear at the Yakima ICE office on January 5, 2026. (Montiel Decl., ¶ 5.) When she appeared, officers advised her that she had entered unlawfully, took her into ICE custody based on the ATD violations, and transferred her to NWIPC, where she remains. (*Id.*, ¶¶ 6, 8; Benjamin Decl., ¶ 9.) Her removal proceedings are pending in the Tacoma Immigration Court, with a master calendar hearing set for March 26, 2026. (*Id.*, ¶ 10.)

DHS formally revoked parole more than eight months before it arrested Petitioner and left her at liberty while she continued to report, file for asylum, and, by her account, comply with ISAP. Her redetention occurred only when she appeared at ICE's request. The asserted violations—missed biometrics and missing GPS data—are the type of ATD entries that may indicate technical malfunction or confusion rather than willful noncompliance, and Respondents do not show that Petitioner was advised of them or given an opportunity to cure. On this record,

ORDER - 19

there is no evidence of recent criminal conduct, active evasion, or comparable exigency. The risk of erroneous deprivation is high, and Respondents have not shown a countervailing need for detention pending a later hearing.

Accordingly, the Court finds that Petitioner Montiel should be immediately released. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324.

**D.        Request for Permanent Injunctive Relief**

Petitioners seek a permanent injunction barring any future redetention during their removal proceedings absent written notice and a pre-redetention hearing at which the government must prove danger or flight risk by clear and convincing evidence. (Dkt. # 1 at 25.) A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003); *see Torres*, 2026 WL 145715, at *8. The record shows that each Petitioner was redetained without constitutionally adequate process, but it does not establish a specific, real, and immediate threat that these same Petitioners will again be redetained without process after they are released under this Order or following the post-revocation hearings required herein. Nor have Petitioners developed any argument addressing the requirements for permanent injunctive relief under *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

Accordingly, Petitioners have not demonstrated the requisite danger of recurrent violation.[4] Their request for permanent injunctive relief is therefore denied.

**IV.        CONCLUSION**

For the foregoing reasons, the Court ORDERS as follows:

(1)        The petition for writ of habeas corpus (dkt. # 1) is GRANTED in part;

---

[4] The Court does not consider Petitioners' new arguments regarding this issue raised for the first time in their traverse. *See Dieng*, 2026 WL 411857, at *9 n. 11.

ORDER - 20

(2)    Respondents shall release Petitioners Garcia, Montiel, Webster, and Rojas from immigration detention within **twenty-four (24) hours** of this Order, subject to appropriate conditions of supervision consistent with applicable statutory and regulatory authority.

(3)    Respondents shall file a certification, no later than **two (2) business days** from the date of this Order, confirming that Petitioners Garcia, Montiel, Webster, and Rojas have been released.

(4)    Respondents shall provide Petitioners Abdelmasseh, Gete, Mulu, Nzola, and Gutierrez-Sanchez with a bond hearing before an immigration judge **within seven (7) days** of this Order, at which the government bears the burden of proof, by clear and convincing evidence, that each Petitioner is a danger to the community or poses a risk of flight. *See Balwan*, 2026 WL 497098, at *8-10. At those bond hearings, Respondents are enjoined from denying bond on the ground that Petitioners are detained pursuant to 8 U.S.C. § 1225(b)(2).

(5)    If a bond hearing is not provided **within seven (7) days** of the date of this Order, Respondents shall immediately release Petitioners Abdelmasseh, Gete, Mulu, Nzola, and Gutierrez-Sanchez from ICE custody on the terms of their most recent release.

(6)    Respondents shall file a status report on or before **April 13, 2026**, confirming whether Petitioners Abdelmasseh, Gete, Mulu, Nzola, and Gutierrez-Sanchez received a hearing before an immigration judge as ordered above, and reporting whether they have been released.

(7)    Upon the release of any of these Petitioners, Respondents must return to that Petitioner any personal property, including personal identification documents and employment authorization documents.

(8)    Petitioners' request for permanent injunctive relief is DENIED without prejudice.

ORDER - 21

(9)   The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 1st day of April, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 22