UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IBRAHIM ABDELMASSEH, *et al.*,

                Petitioners,

    v.

LAURA HERMOSILLO, *et al.*,

                Respondents.

Case No. C26-730-MLP

ORDER GRANTING MOTION TO ENFORCE

    This matter is before the Court on Petitioners Nfinda Nzola, Habtamu Gete, and Mikiyas Mulu's motion to enforce the Court's partial grant of their petition for a writ of habeas corpus. (Dkt. # 17.) The Court has reviewed the parties' briefing (dkt. ## 21, 24, 27) and the relevant portions of the record (dkt. ## 22, 25). The parties are familiar with the facts, procedural history, and governing law. For the reasons set forth below, the Court GRANTS the motion (dkt. # 21).

## I.    DISCUSSION

    In its April 1, 2026 Order, the Court held that Petitioners' redetention without adequate process violated due process and ordered prompt post-deprivation bond hearings at which the government would bear the burden to prove danger or flight risk by clear and convincing

ORDER GRANTING MOTION TO ENFORCE - 1

evidence. (Dkt. # 17 at 5-8, 21.) The Court retained jurisdiction to ensure compliance and to order release if the government failed to cure the violation. (*Id.* at 8, 21.)

**A.    Exhaustion**

In the immigration habeas context, exhaustion of administrative remedies under 28 U.S.C. § 2241 "is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). Even when these factors favor exhaustion, courts recognize exceptions where remedies are inadequate or futile, irreparable injury will result, or proceedings would be void. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

Petitioners challenge the adequacy of court-ordered bond hearings and seek enforcement of a specific habeas remedy. The issue is whether the government complied with this Court's conditional writ by providing hearings at which it actually bore and met the clear-and-convincing burden. That is a legal and constitutional question best resolved by this Court, not in the first instance by the Board of Immigration Appeals ("BIA"). *See Tavurov v. Noem*, 2026 WL 1283513, at *5 (W.D. Wash. May 11, 2026); *W.T.M. v. Bondi*, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026).

This motion does not invite "deliberate bypass" of the BIA. The agency has now generated a record and Petitioners are not asking the Court to re-decide ordinary bond disputes; they seek a determination that the specific, court-mandated process intended to cure a due

ORDER GRANTING MOTION TO ENFORCE - 2

process violation was not provided. Resolving such issues provides guidance to immigration courts conducting similar bond hearings. *See Soriano v. Hernandez*, --- F. Supp. 3d ---, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026); *Tavurov*, 2026 WL 1283513, at *5.

Further, BIA bond appeals routinely take six months or more, during which Petitioners would remain detained. *See Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025). Requiring Petitioners to wait for BIA review after a constitutionally required bond hearing "would inflict the kind of harm that the bond hearing was designed to prevent—that is, prolonged detention without meaningful process." *Garcia Miranda v. Hernandez*, 2026 WL 1328227, at *3 (W.D. Wash. May 13, 2026). Courts in this District routinely decline to require exhaustion, or waive it, in comparable circumstances. *See id.*; *Tavurov*, 2026 WL 1283513, at *5. Accordingly, prudential exhaustion does not bar review, and any such requirement would be waived under *Laing*.

**B.    Petitioners' Bond Denials Violated Due Process**

The Court reviews an immigration judge's ("IJ") flight-risk determination for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 779, 784-785 (9th Cir. 2024); *Anyanwu v. Bondi*, 2025 WL 3466910, at *4 (W.D. Wash. Oct. 6, 2025), *report and recommendation adopted*, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025). The question is whether the IJ applied the correct legal standard and rationally connected the evidence to the conclusion; the Court does not reweigh evidence. *Martinez*, 124 F.4th at 785.

The parties do not materially dispute what occurred at the bond hearings. (*See* dkt. ## 21 at 2-6; 24 at 1-2, 6-9; *see also* dkt. # 25, Exs. 1-3 (audio recordings of bond hearings).) The government submitted a Form I-213 for each Petitioner and, for Mr. Gete, a non-final removal order. It did not submit underlying records for the alleged supervision violations or evidence

ORDER GRANTING MOTION TO ENFORCE - 3

rebutting Petitioners' sponsorship and community-support evidence (dkt. # 22, Exs. A, E, I); Petitioners submitted substantial documentation of sponsors, community support, and compliance with prior supervision (*id.*, Exs. B, F, J); and the IJ issued brief form denials, followed by written decisions that (a) treated this Court's Order as proof that alleged supervision violations occurred and established flight risk, and (b) relied on findings drawn from Petitioners' removal files that were not introduced into the bond record (*id.*, Exs. C-D, G-H, K-L).

The IJ's denials recite the clear-and-convincing standard this Court imposed but do not show that standard was applied. *See Tavurov*, 2026 WL 1283513, at *7-8; *Gimenez v. Hernandez*, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026).

First, the IJ treated this Court's earlier description of the government's allegations as "colorable" or "non-frivolous" reasons to order a hearing as if they were factual findings that the alleged violations occurred and demonstrated flight risk. (Dkt. # 22, Exs. D at 2-3, L at 3.) But the Court made no such findings; it ordered a hearing so the government could prove those allegations by clear and convincing evidence. (Dkt. # 17 at 5-8, 21.) Using the Court's remedial rationale as substantive proof collapses the distinction the conditional writ created.

Second, the IJ relied on material from Petitioners' removal proceedings that neither party introduced into the bond record, including allegations about "feigning illness" and comments about similar filings by counsel. (Dkt. # 22, Exs. H at 3, L at 3.) Custody and removal proceedings are "separate and apart," and the IJ is a neutral adjudicator, not an investigator filling gaps in the government's case. *See Garcia Ortiz v. Henkey*, 2026 WL 948275, at *4 (D. Idaho Apr. 7, 2026). Resort to extra-record assertions to support a flight-risk finding confirms that the government did not meet its burden with the evidence it actually offered.

ORDER GRANTING MOTION TO ENFORCE - 4

The IJ's flight-risk analysis also relies on factors that are of limited relevance to likelihood of appearance and are not linked to Petitioners' specific circumstances. The IJ emphasized Petitioners' lack of status, recent entry, and the perceived "speculative" nature of their immigration relief. (Dkt. # 22, Exs. D at 3, H at 2-4, L at 2-3.) But the BIA has long recognized that such factors "bear little if any relevance" to whether someone will appear, particularly where other equities favor appearance. *Matter of Patel*, 15 I. & N. Dec. 666, 666-67 (BIA 1976). Courts in this District have rejected similar reasoning, even where the detainee bore a preponderance burden. *See Soriano*, --- F. Supp. 3d ---, 2026 WL 969764, at *5; *Vasquez Lopez v. Hernandez*, --- F. Supp. 3d ---, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026). Here, the IJ did not explain why Petitioners' immigration posture or manner of entry would motivate flight despite their concrete community ties and proposed release conditions, or connect those factors to any history of failing to appear, attempts to flee, or other objective indicators of flight risk.

Finally, the IJ did not meaningfully address Petitioners' unrebutted sponsorship and support evidence. Under *Matter of Dobrotvorskii*, 29 I. & N. Dec. 211, 215 (BIA 2025), an IJ must consider offers of sponsorship from "valid, reliable, and credible" sponsors when assessing whether conditions can mitigate risk. Petitioners submitted detailed sponsorship packages, including a lawful permanent resident aunt and her U.S.-citizen husband (Petitioner Nzola), and long-term U.S.-citizen friends and community members offering housing and support (Petitioners Mulu and Gete). (Dkt. # 22, Exs. B, F, J.) The IJ reduced these to "letters of support" or "2 friends," without explaining why the sponsors were not reliable or why no combination of bond or conditions could mitigate any risk. (Dkt. # 22, Exs. D at 3, H at 2-3, L at 2-3.)

ORDER GRANTING MOTION TO ENFORCE - 5

Respondents identify no evidence submitted by the government that could, standing alone, satisfy a clear-and-convincing standard against this sponsorship and community-support record. The Ninth Circuit has held that even a final removal order is not, by itself, clear and convincing evidence of flight risk. *See Singh*, 638 F.3d at 1205.

On this record, the Court finds the IJ did not apply the Court-ordered clear-and-convincing standard and that the evidence presented could not, as a matter of law, support a conclusion that Petitioners are flight risks under that standard. Because Respondents have not cured the constitutional violation previously identified by this Court, Petitioners are entitled to release. *See Tavurov*, 2026 WL 1283513, at *10 (collecting cases ordering immediate release after finding abuse of discretion in bond denials).

## II.    CONCLUSION

For the foregoing reasons, the Court ORDERS that:

(1)    Petitioners' motion to enforce (dkt. # 21) is GRANTED.

(2)    Respondents shall release Petitioners Nzola, Gete, and Mulu from immigration detention within **twenty-four (24) hours** of this Order, subject to appropriate conditions of supervision consistent with applicable statutory and regulatory authority.

(3)    Respondents shall file a status report confirming that Petitioners Nzola, Gete, and Mulu have been released from immigration custody within **two (2) business days** of this Order.

(4)    Upon the release of these Petitioners, Respondents must return any personal property, including personal identification documents and employment authorization documents.

Dated this 26th day of May, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER GRANTING MOTION TO ENFORCE - 6